UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SABRINA WEI,<br><br>                  Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>                  Defendant. | CASE NO. C16-1701-MAT<br><br>ORDER RE: SOCIAL SECURITY<br>DISABILITY APPEAL |

Plaintiff Sabrina Wei proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, this matter is AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1958.[1] She completed one year of college and previously worked as a gambling dealer and cashier. (AR 43, 225.)

Plaintiff filed SSI and DIB applications in June 2013, alleging disability beginning October

---

[1] Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

ORDER
PAGE - 1

22, 2012. (AR 190-208.) She remained insured for DIB through December 31, 2012 and, therefore, was required to establish disability on or prior to that "date last insured" (DLI) to receive DIB. *See* 20 C.F.R. §§ 404.131, 404.321. Plaintiff's applications were denied initially and on reconsideration.

On March 25, 2015, ALJ Kimberly Boyce held a hearing, taking testimony from plaintiff and a vocational expert. (AR 23-51.) On June 18, 2015, the ALJ issued a decision finding plaintiff not disabled from October 22, 2012 through the date of the decision. (AR 10-17.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on August 29, 2016 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff did not have a medically determinable impairment prior to her DLI, but had severe impairments of cervical spine degenerative disc disease and left lateral epicondylitis after her DLI. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

1 residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work with the following limitations: can stand and walk for about six hours and sit for more than six hours in an eight-hour day with normal breaks; can lift, carry, push, and pull within light exertional limits, except lifting with the non-dominant left upper extremity is limited to occasional; never climb ladders, ropes, or scaffolds, frequently stoop and kneel, and occasionally crawl; pending treatment, can frequently reach, handle, and finger with the left upper extremity; and no concentrated exposure to vibration and/or hazards. With that assessment, the ALJ found plaintiff able to perform her past relevant work as a cashier.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Having found plaintiff not disabled at step four, the ALJ did not proceed to step five. The ALJ concluded plaintiff had not been under a disability from her alleged onset date through the date of the decision.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of

which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in considering medical opinion evidence and that the RFC is not supported by substantial evidence. She requests remand for an award of benefits or, in the alternative, for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Medical Opinions

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, the opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Plaintiff avers error in the ALJ's consideration of opinion evidence from consultative examiner Dr. Gary Gaffield and treating provider Dr. Sarah Rogers. Because the record contained contradictory opinions, the ALJ was required to provide specific and legitimate reasons for rejecting the opinions of Dr. Gaffield and Dr. Rogers.

A. <u>Dr. Gary Gaffield</u>

Dr. Gaffield examined plaintiff in October 2013. (AR 298-300.) He opined plaintiff had no limitations in walking or sitting; could lift and carry no more than twenty pounds occasionally and ten pounds frequently; could perform postural activities frequently, limited by her left elbow;

could perform manipulative activities occasionally, limited by her left elbow and its impact causing weakness in her left hand due to elbow pain; and needed to avoid situations where she would have to rely on her left arm to grab bars, railings, or support, as well as climbing, heavy objects, climbing scaffolding, and working overhead or on heavy equipment. (AR 302-03.)

The ALJ gave partial weight to Dr. Gaffield's opinions. (AR 16.) She gave great weight to the sitting, standing, walking, and postural movement limitations, finding them generally consistent with the examination, including plaintiff's normal gait, ability to heel and toe walk, and to change positions and get dressed without difficulty. (*Id*. (citing AR 301).) The ALJ gave little weight to the opinion plaintiff could perform manipulative activities only occasionally, "as there is no diagnostic imaging showing any changes in [plaintiff's] left elbow, and Dr. Gaffield found only slightly decreased motor strength in the left upper extremity." (*Id*.)

An ALJ properly considers the extent to which a physician's opinion is supported by medical evidence. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.") An ALJ may reject an opinion based on the absence of supportive objective findings. *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004). An ALJ may also reject a medical opinion based on a contradiction between the opinion and the physician's own notes or observations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008). When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute

its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). In this case, the ALJ rationally interpreted the evidence, and the evidence reasonably supports the ALJ's conclusion.

Plaintiff's arguments do not undermine the substantial evidence support for the ALJ's conclusion. She argues the ALJ erroneously and improperly sought to substitute her own interpretation of Dr. Gaffield's clinical findings for that of an expert examiner. She denies there is any need for diagnostic imaging in the diagnosis of lateral epicondylitis (also commonly known as "tennis elbow", *see* http://orthoinfo.aaos.org/topic.cfm). She avers the ALJ mischaracterized Dr. Gaffield's findings as minimal, given that he also observed: "On the left there was pain on manipulation, primarily of the lateral aspect of the elbow at the epicondyle. Pain on percussion of this area, however, Homan's sign was negative as was Finkelstein sign. She had weakness in her left elbow, restricted motion of the left shoulder due to elbow pain and weakness of grip in her left hand to elbow pain." (AR 300 (also noting dexterity was intact, no obvious deformities, and no unusual neurologic findings).)

The ALJ did not improperly substitute her own interpretation of the evidence for that of Dr. Gaffield, or ignore either his diagnosis or the need for some degree of limitation in plaintiff's manipulative activities. The ALJ accurately and reasonably pointed to the absence of imaging showing changes in plaintiff's left elbow as a basis for rejecting the degree of impairment opined. Nor did the ALJ ignore the objective evidence from Dr. Gaffield. The ALJ noted plaintiff's report to Dr. Gaffield of neck and left elbow pain, that she had not seen an orthopedic physician, and that she was only taking Tylenol, which was "'very helpful.'" (AR 15 (quoting AR 298).) The ALJ

also summarized the findings on examination. (*See id.*) Plaintiff had full range of motion in her cervical spine and in both thumbs and wrists, as well as intact dexterity, but some reduced range of motion and slight weakness in her left elbow, left shoulder, and reduced grip strength in her left hand. She was able to heal, toe, and tandem walk, and had no trouble dressing or changing positions. Diagnostic imaging showed moderate-to-severe disc space narrowing at C5-C6, but only "'very mild'" changes in the lumbar spine, an unremarkable thoracic spine, and no degenerative changes in the elbow. (*Id.* (citing and quoting AR 304-10).) The ALJ, for this reason and for the reasons stated above, provided specific and legitimate reasons for rejecting Dr. Gaffield's opinion as to manipulative activities.

B. <u>Dr. Sarah Rogers</u>

Dr. Rogers first examined plaintiff on April 9, 2013. (AR 285-87.) As noted by the ALJ, plaintiff reported worsening pain with repetitive movements, but only taking over-the-counter medications such as Advil for pain control, and Dr. Rogers found some subjective tenderness in her back and left elbow, but only slightly decreased grip strength in her left, non-dominant hand. (AR 15 (citing AR 285, 287).)[2] In a form completed that day, Dr. Rogers limited plaintiff to sedentary work, with the ability to lift ten pounds maximum and frequently lift or carry light weight articles, and able to walk or stand only for brief periods, "without repetitive movement of [left] arm." (AR 281.) She estimated the limitations to persist for twelve months, and recommended treatment through icing, wearing a brace, nonsteroidal anti-inflammatory drugs as needed, and rehabilitation exercises. (AR 281-82.)

---

[2] The ALJ subsequently stated: "The claimant attended physical therapy in July and August 2013, though treatment records from this treatment noted that the claimant was still working full-time until June 2013, suggesting she was not as limited as alleged." (AR 15 (citing AR 291 (prior level of function independent "[a]nd working full time until one month ago").)

ORDER
PAGE - 7

The ALJ gave little weight to Dr. Rogers' opinions. (AR 16.) She stated: "This visit was for the purpose of a Department of Social and Health Services [(DSHS)] evaluation, and Dr. Rogers had an insufficient history to determine the duration of these impairments, as this was the claimant's first time visiting a doctor regarding this impairment." (AR 16-17 (citing AR 282 ("This is the first time she has seen a doctor about [lateral epicondylitis].")) ". . . Dr. Rogers noted only minimally decreased left handed grip strength, and recommended only the most conservative treatment, which is inconsistent with a limitation to sedentary work." (AR 17.)

The ALJ reasonably considered the fact Dr. Rogers rendered her opinion at the time of her initial examination of plaintiff, and that this was the first occasion plaintiff sought treatment regarding her elbow. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. . . . When the treating source has reasonable knowledge of your impairment(s), we will give the source's medical opinion more weight than we would give it if it were from a nontreating source."), and §§ 404.1527(c)(6), 416.927(c)(6) (ALJ considers any factor that tends to support or contradict the opinion of a physician). *See also* §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source.")

The ALJ also reasonably considered the supportability of the opinion, §§ 404.1527(c)(3), 416.927(c)(3), and the minimal objective findings, *Batson*, 359 F.3d at 1195. Again, the ALJ summarized Dr. Rogers' findings on examination (AR 15) and rationally construed those findings

as not supporting the degree of impairment opined. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. In addition, the ALJ's interpretation of inconsistency between the limitation to sedentary work and the recommendation of only conservative treatment was appropriate and rational. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding rejection of treating physician's opinion based on discrepancy between the opinion and the physician's description of the claimant and prescription of a conservative course of treatment); *Morgan*, 169 F.3d at 603 (internal inconsistency properly considered).

In challenging the ALJ's reasoning, plaintiff points to consistency in the opinions of Drs. Rogers and Gaffield. It remains, however, that the ALJ rationally interpreted the medical record and evidence from both of these physicians, provided adequate reasons for rejecting their opinions, and, as discussed below, properly relied on contradictory medical opinions.

Plaintiff also rejects the relevance of the fact the evaluation was conducted for DSHS. "[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998); *accord Lester*, 81 F.3d 832 (absent "evidence of actual improprieties," examining doctor's findings entitled to no less weight when examination procured by the claimant than when obtained by the Commissioner). As a general matter, the fact plaintiff saw Dr. Rogers for a DSHS evaluation is not properly relied upon in the rejection of the opinions contained therein. However, the ALJ did not rely on this fact in isolation. She noted it in conjunction with the nature and extent of the treatment relationship at the time the opinions were rendered, as well as the fact it was plaintiff's first time seeing a physician in relation to the impairment. The DSHS observation does not support a finding of reversible error.

Plaintiff otherwise presents a different interpretation of the medical evidence and the opinions of Dr. Rogers. The ALJ's interpretation is at least equally rational and will be upheld.

RFC

At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and assess her work-related abilities on a function-by-function basis, including a required narrative discussion. *See* 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p. RFC is the most a claimant can do considering his or her limitations or restrictions. SSR 96-8p. The ALJ must consider the limiting effects of all of plaintiff's impairments, including those that are not severe, in determining his RFC. §§ 404.1545(e), 416.945(e); SSR 96-8p. An RFC must include all of the claimant's functional limitations supported by the record. *Valentine v. Comm'r SSA*, 574 F.3d 685, 690 (9th Cir. 2009).

Plaintiff avers a lack of substantial evidence in the record for the ALJ's finding she could use her left arm and elbow on a frequent basis. She maintains error in the rejection of the opinions of Drs. Gaffield and Rogers as to her greater limitation and in the reliance on the contrary opinion of non-examining State agency physician Dr. Robert Bernardez-Fu.

The ALJ gave great weight to the November 2013 opinions of Dr. Bernardez-Fu. (AR 16.) Dr. Bernardez-Fu opined plaintiff could perform light work, frequently stoop, kneel, climb ramps and stairs, crouch, handle, reach, and finger with her left upper extremity, occasionally crawl and lift with her left upper extremity, and never climb ladders, ropes, or scaffolds. (AR 82-85.) Although a non-treating, non-examining medical source, the ALJ found the opinions of Dr. Bernardez-Fu based upon a thorough review of the available medical record and a comprehensive understanding of agency rules and regulations. (AR 16.) The ALJ found the opinions internally consistent and well supported by a reasonable explanation and the available evidence. She found

no records since the opinion suggesting any greater limitations, as plaintiff had continued with conservative treatment.

Plaintiff's arguments do not undermine the ALJ's consideration of the evidence and medical opinions in formulating the RFC. Plaintiff, for example, infers from the record that Dr. Bernardez-Fu considered only the opinions of Dr. Gaffield and not the opinions of Dr. Rogers. (*See* AR 67-68 (outlining only opinions of Dr. Gaffield).) As the Commissioner observes, the same document cited to by plaintiff reflects Dr. Bernardez-Fu also received records from Neighborcare Health Administrative Office, where Dr. Rogers provided plaintiff treatment. (*See id*. (evidence received from Neighborcare on August 28, 2013) and AR 282-84 (April 9, 2013 treatment record).) Dr. Bernardez-Fu, at the very least, received the treatment record created by Dr. Rogers on the day she rendered her opinions. Plaintiff also maintains the absence of any explanation provided by Dr. Bernardez-Fu for his opinions or his rejection of the opinions of Dr. Gaffield. However, the records show Dr. Bernardez-Fu's reasoning as including that plaintiff's impairments were amenable to treatment: "By 10/2013 [claimant] should have regained her ability to use her upper extremities for all use – mild impairments = nonsevere." (AR 70.) They also show Dr. Bernardez-Fu considered the evidence from Dr. Gaffield in detail, including the "NORMAL radiographs of the left elbow[]" and full motor strength/muscle bulk and tone in the upper and lower extremities, with the exception of the left upper extremity, where "grip, wrist, elbow and shoulder were all 4/5 due to elbow pain." (*Id*. (emphasis in original).) (*See also* AR 74 (additional explanation: "See fofae for chronic L lateral epicondylitis and generalized back pain with evidences of mild DDD/DJD imaging findings consistent with age."))

Plaintiff additionally challenges the ALJ's reliance on the "extremely limited information" about her activities. (Dkt. 16 at 12.) She denies inconsistency between the activities, including

driving to the gym and exercising daily, doing laundry, and preparing meals, and a limitation to only occasional use of the left arm. She asserts the absence of evidence suggesting she used her left arm more than occasionally in her exercises or exercised for any period of time approaching "frequent (up to 2/3 of the workday)." (Dkt. 16 at 12.) The ALJ's decision does include consideration of plaintiff's activities as one among several different factors detracting from plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms. (AR 15.) Plaintiff demonstrates no error in that consideration, or in relation to the RFC assessed. *See, e.g., Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills[.]")[3]

It should further be noted that the ALJ did not rely only on the medical opinions of Dr. Bernardez-Fu. The record also included the September 2012 opinions of examining physician Dr. Raymond West. (AR 273-78.) As described by the ALJ, Dr. West opined plaintiff could lift and carry fifteen pounds, stand and walk for six hours cumulatively in an eight-hour day with frequent breaks, sit for six hours cumulatively in an eight-hour day, and had no postural or manipulative limitations. (AR 16.) Dr. West stated specifically in relation to postural limitations: "Probably none providing they are unhurried and not repetitious." (AR 277.) With manipulative limitations, he stated: "None providing activities are not prolonged and with intermediate rests." (AR 277.) On examination, Dr. West found, *inter alia*, range of motion in plaintiff shoulder to be within

---

[3] Plaintiff did not raise a specific challenge to the ALJ's assessment of her symptom testimony. (*See* Dkt. 16 at 2, 10-12 and Dkt. 18 at 4.) The Court, as such, considers the argument only as it is raised, that is, in challenging the ALJ's assessment of a RFC limitation to frequent use of plaintiff's left upper extremity. *See generally Carmickle*, 533 F.3d at 1161 n.2 (declining to address issues not argued with any specificity) (citing *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (the court "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief").)

ORDER
PAGE - 12

normal limits, although done with apparent discomfort bordering on pain, and within normal limits in elbow joints, wrist joints, and finger/thumb. (AR 276.) He found full motor strength throughout the upper and lower extremities, and appropriate and symmetrical muscle bulk. The ALJ gave the opinions of Dr. West only partial weight because he had no diagnostic imaging to support his findings or any other objective records to review at the time. (AR 16.)

Plaintiff, in sum, does not demonstrate error in the ALJ's consideration of the medical opinions or in the assessment of the RFC. The ALJ's conclusions have the support of substantial evidence and will not be disturbed.

## CONCLUSION

For the reasons set forth above, this matter is AFFIRMED.

DATED this 7th day of August, 2017.

Mary Alice Theiler
United States Magistrate Judge